Good morning. My name is Greg Silvey and I represent the appellant Paul Driggers. And I bring to you today what I at least consider to be an absolutely fascinating case of interstate travel and the commission of murder for hire. And our precise legal question here today is, what relationship is required between the interstate travel and the intent to commit murder? And I will also begin by saying what this is not about. The appellant does not claim that one need to specifically intend to cause travel, nor that travel needs to be particularly important to the murder for hire, but that there needs to be a temporal relationship. And so in order to commit this crime, the intent to commit murder must have existed at the time that the travel existed. Counsel, can't we decide this on harmless error? There were all of these conversations that took place before he embarked on his trip. Two reasons why I don't believe that could be done. Number one is it's a constructive amendment. The indictment clearly charged him with travel with the intent, and the jury instructions took the with out. Well, ordinarily when we're talking about a possible amendment, it's in terms of evidence that has come in, and the evidence that came in here was completely consistent with the indictment. Well, I guess I would argue that would go towards a variance, sort of the different proof coming in. As I understand the constructive amendment law, it is the grand jury gets to decide something, and if the jury is not charged that way, it's just per se reversal, and it was objected to specifically referring to the language of the amendment. And so I guess my argument would be my understanding is there's one chance to charge it, one chance to instruct him when it's changed. It doesn't matter anymore. But as to the harmlessness, which then I guess would be involved with, say, if it was a variance, and we talk about the facts, I mean, this case, I mean, we start in April. The hitman, potential hitman turned snitch, travels to Idaho to discuss what they're going to do. It is left at that moment with it's not a done deal. And as Robinson testifies a couple times in trial of, you know, he just left it. He didn't know what he wanted to do. He was going to try to see how it worked out, his situation with his ex-wife worked out in the courts. And so certainly there was no and then basically Robinson goes back to California. Triggers, they talk. Triggers says it's a green light apparently. But then when he calls to have him come back to Idaho, then it's, well, it's, you know, we have to have a long talk. They get there. There's the recorded two-hour face-to-face conversation. We do know the facts. I'm still waiting for your answer to Judge Fletcher's question. And you sort of jumped into a ravine by talking about variance. And I thought almost you were going to start talking about departures. Well, yes. So I don't know. Isn't your argument, and I really don't want to put words in your mouth, all you were citing is facts. But do I understand your argument is it's not clear what Trigger's state of mind was at the time of the interstate travel, and therefore that was something the jury had to find. You can't find harmless error. It was not a situation where the evidence all stacks up for one state of mind at the time of the travel. There were various pieces of evidence going various ways, and this is precisely the kind of thing the jury properly instructed needs to find. Exactly. I mean, again, I don't want to put words in your mouth, but is that your argument? Yes, and I'll accept those words. I would have done that in a much more long-winded fashion. But I do have a few more things along those lines. But let's talk about that. Let's talk about it. If that's your, I mean, there were two instances of travel. Both of them, the travel was done by the. . . Robinson. Thank you. The reporter hit man, the guy Robinson. And so there could have been the state of mind at the first travel, or there could have been at the second travel. In other words, if he had the right state of mind at the time of the first travel, then there would be harmless, which is overwhelming. And so you need to focus in on what his state of mind, what the evidence was that's the biggest state of mind at both times when travel occurred. Well, back to the first travel in April, again, very clearly when that was over, Robinson, the hit man, did not think that he would. . . There was nothing consummated. It wasn't completed. They're going to see what happens. And where that becomes important is we have to remember this is an. . . Let's just ask a prior question. What exactly has to be the federal state of mind? Does he have to have sort of a firm intent to commit murder, or is it enough if he is saying travel and interstate commerce, I have some possibility that I may want a murder to take place. I have a very definite scheme in mind. The scheme does involve murder, but I haven't yet made up my mind that murder will take place. Why isn't the second state of mind enough under statute? Let's say as a jurisprudential matter, this is an anticipatory crime. I mean, society is. . . If hit men didn't really kill people, I think we would be less concerned about it as a society. I mean, the harm we're trying to avoid is murder. So we go from here is the actual ultimate harm. We back up to, say, a solicitation for the murder, and then we back up again where you're traveling to hire somebody to murder, and then it seems like if the person doesn't really know if they're going to murder somebody or not, then we're way over here, and we're not even close to the actual murder. So I guess that gets into this is not an attempt case, but it almost sounds like that is an attempt to commit interstate travel in the commission of murder for hire that were so many steps before it. I think certainly in the way it's teed up, we weren't arguing, say, a First Amendment issue, but can we sit around and discuss killing people if we don't really intend to do it? Or how much do we have to intend to do it, I guess, is what we drift into. And so by the time if I decide I'm going to outsource part of my business and I bring in some consultant to tell me what they can do for me, that doesn't mean I decided to outsource. It doesn't mean that I'm interviewing for the job or that I'm going to hire somebody. I would say that that was kind of the first April meet and greet sort of thing by using a business analogy. So that's where I would say is, and I have another point I would like to make as well about how the jury is charged. But so I would say that there at least has to be something more than this is something I might think about. I mean, the law primarily does not criminalize thought. It criminalizes actions. It was pretty specific. And what he said is he didn't say, gee, I'd like to think about killing some unknown person. It was, since I'm thinking of having killed my ex-wife, and it all depends on how things go in this custody hearing. So it's pretty definite. There's a definite contingency over which Dominguez doesn't have any direct control. I mean, he doesn't know how the custody hearing is going to come out. And it's pretty firm. It says, you know, if I don't go that way, then I'll get it. I'll try to get it by having you kill her. But part of, you know, as. . . That's pretty definite, isn't it? Well, when we go and, I guess, look at, I mean, this is, you know, the hours that they were talking. I mean, Driggers was just so equivocable. I mean, it was just torture of him not being able to decide. I mean, after the two-hour-long face-to-face recorded conversation, the police actually had Robinson call him the next day to try to force an answer out of him, because they just weren't comfortable that he had ever really decided, because he's just assigned the green light and you can do this or that. And so, I mean, in looking from the original conversation, I mean, this is. . . Your argument, again, if I can synthesize it, is that that is the kind of situation where the evidence of intent is not clear and you need to have a finding by a jury properly instructed. Exactly. We could have found, if properly instructed, the jury could have found the records of intent here. I. . . You're not making an insufficiency argument. Right. We have never made an insufficiency argument the way the jury was charged. The government argued it that way. We're not saying the way that they're charged with this disconnect that the jury couldn't have found it. It is much more it's the, had the jury been properly instructed, number one. . . You could make an insufficiency argument if you thought the jury should have been instructed the other way. Right. And if properly instructed there was not enough evidence to support it, then you would be able to make an insufficiency argument, in which case, if you went on that, you would get no retrial and your client would just go out free. But you haven't made that argument. No, we haven't. I specifically made that argument. Had the jury been instructed with, you know, element number one, cause travel, element number two, with the intent to commit murder, had the jury been instructed that way, that there was insufficient evidence. Cause the way, and it's a convoluted argument, because the way they were instructed, they could take the entire ball of wax from April to July and decide if there was intent to commit murder. The defense attorney was never allowed, the way they were instructed, to argue that there's not enough intent in the April travel. And the prosecution had no reason to divvy up what the evidence was at this point or that point, because of the way the jury was instructed. So the Rule 29 motion below was this sufficiency based on, had the jury been correctly instructed, and I do believe that I followed that up on appeal. But the point is, the jury. I don't see any brief. I might have missed it. It's certainly not one of the headings. All right. Insert, well, I think I might have done it in the, I might have done it in the context of challenging the Rule 29 motion below, which that was the underlying, that was the underlying issue below. And I do recall in a reply brief when the government is arguing that there was sufficient evidence that I, in fact, no, we're not arguing that there overall wasn't sufficient. And, again, I guess I was considering the constructive amendment to be a dispositive issue. And everything depends on what did the instructions really need to be. If this court decides that the jury was not instructed correctly, then there's just this whole set of errors that flow from it. But, again, the point is, the jury should have been, the jury, a properly instructed jury would have needed to decide when the intent existed. We have a minute left. Do you want to say anything? I will reserve that. Thank you. Good morning. May it please the Court. My name is Lynn Lamprecht, and I'm an assistant U.S. attorney in the District of Idaho. Since we left the defendant's argument with whether or not the jury was properly instructed, if it's appropriate for the court, that's the issue that I would start with, was whether the court's instructions taken as a whole did correctly instruct the jury regarding the crime of causing interstate travel and the commission of a murder for hire. The defendant has actually conceded in his reply brief that the court's instructions as written substitute the word and for with. The government submits that that is correct under Edelman. The Edelman court said specifically that it is enough that the defendant caused the use of interstate facilities in the commission of the offense and that the defendant had knowledge of the nature of the substantive offense of which he promoted, not that one had to do with a specific link between the two. In this case, the jury instructions when read as a whole do follow what Edelman said. Edelman was a Fifth Circuit case. Edelman was a Fifth Circuit case. It's been followed in connection with the jurisdictional requirement of causing travel or using an interstate elevator. In the Ninth Circuit? Yes, sir. I believe so. In Roselli, they didn't – I'm not sure that they followed Edelman, but the Stafford court did in talking about Roselli. I'm sorry? The Stafford court, the court that decided Stafford in the Ninth Circuit, adopted Roselli's reasoning that the travel and the intent specific – the defendant did not have to have the intent to cause the travel. So there was no direct link in that manner. And that, in fact, a defendant doesn't even have to know that – That's not the argument. The argument is not that he – whether he had an intent to cause the travel. The question is whether, at the time of the travel here, the intent to commit murder. I mean, there has to be a link between the two elements. I'm – Surely, when you intend to commit murder, causing somebody to travel across state lines can't possibly be an offense. I think absolutely. Let's say you sort of intend to murder your wife, and then you cause your niece to come – you pay for her to come travel to visit. I mean, there's no connection. There has to be a nexus between the two elements. The nexus between the two elements, I believe, Your Honor, is the fact that they both need to be connected to the proposal. Where is it in the instruction as given by the district court? Because he says, and. They both have to exist in the time frame of the commission of the crime. But you could say, and. You could say, you know, the defendant had intended to kill his wife, and he caused his niece to travel from New York. He sent her a ticket because she was on Christmas break, and he wanted to see his niece. That's an and. Surely that does not make for a crime. There has to be a nexus. You have to have the person traveling across state lines for the purpose of advancing the scheme, no? The government submits, Your Honor, that the nexus is that both have to be – we agree that they both have to coexist in time, and that both have to exist in connection with the scheme to commit the murder for hire. But they don't have to be specific.  Coexist with the scheme. Is that English? Yes, sir. I hope so. Why didn't the government agree with the defendant that the instructions ought to say with? I think that the problem was started in the district court below, Your Honor. In the district court below, the defense argued that the travel be committed with the intent to commit murder. In other words, that the travel – and the second instruction that was proposed stated that the – I'm sorry if I could just find it – that the intended defendant – the crime that – the instruction they asked was that the defendant intended the subset of events, the murder be committed in violation of the law at the time that he caused the travel. And their argument in the district court was that the intent to commit murder had to be finalized and evident at the time the defendant caused the travel, which isn't the law. The law is not that the defendant has to intend that the murder happened when the travel occurred, and the law is not that the defendant even has to know that the travel is occurring. The law is simply that the travel has to occur in connection with the commission of the crime, and, of course, the intent to murder has to also be in connection. What in the instructions tells us it has to be in connection? That's what the instructions said. The court's instructions were that the three elements to be proved in the commission of the crime for murder for hire were that the defendant caused another to travel, that he had the intent to murder, and that he promised to pay something of pecuniary value. And the court further instructed the jury at a later time, a little farther down, that these elements had to be committed within the timeframe charged in the indictment. And the court also specifically said that – Well, how do you exclude my hypothetical? Me? How do you exclude my situation, the one I suggested? Why wouldn't this apply to the instruction, make him guilty of murder, even if he had the person traveling have nothing to do with the crime, given the court's instruction? You know, are you going to give the instruction in front of me? I do have the instructions. Yes, Your Honor. Well, it says first – I mean, it says, must prove beyond a reasonable doubt to make its case. First, defendant caused Matthew Robinson to travel from one state to another. Right? Right. You know, if we substitute Matthew Robinson, you know, say his niece, Jane, to travel from one state to another. Right? Yes. It says second, defendant intended to murder. And, you know, since they find fine, he intended to commit the murder. And third, defendant promised to pay Matthew Robinson anything of pecuniary value. So he did that. But the first element has nothing to do with the murder. It's just he's having somebody traveling across state lines. Where does the nexus between the first element and the second element that travel actually is in connection with and in support of and aid of an intent to commit murder? Because the defendant in the commission of the crime must have the intent, not at some other time or not with some other purpose, but as the court charged, in order to convict the defendant of the crime. Where is a jury required to find that the travel, which is the first element, is in any way connected with the murder? These instructions did not say that. The case law says that the travel has to be connected with the murder. But the jury has to be told what to find. The fact that this case law, they're saying this is required, if it's not reflected in the instruction, the jury doesn't know. The jury is told these are three separate elements. And as best I can tell, the first one needs to have no relationship to the murder. He just caused somebody to travel across state lines. There's no sort of nexus requirement. The jury needs to find no relationship between the travel and the rest of the elements. I mean, I don't see it here. There's someplace else in the instruction where they're tied together. I would respectfully disagree with your analysis, Your Honor. Why don't you persuade me? I'm trying. I would like to do that. I believe the instructions charged the jury that in the commission of this crime, those three elements all had to be present. You believe that, but why don't you make me believe that? Where does it say that? That's what the court's instructions say. In the commission of this crime, the government has to prove these three elements were present. I think I added the words are present. But he said that in order for the defendant to be found guilty, the government must prove each of the following elements exist beyond reasonable doubt. So look at the first one. Look at the first one. First, the defendant caused Matthew Robinson to travel from one state to another. That's it. It just caused him to travel. It doesn't say it caused him to travel for the purpose of committing the crime or with the intent that he committed the crime. It doesn't say anything like that. It just caused him to travel. It says caused him to travel in the commission of the crime. What does it say? It says to find him. I'm sorry. What does it say in the commission of the crime? In the first part. Because the court says that in the commission of the crime for murder for hire, this is what the government has to prove. The defendant, William Paul Driggers, is charged in the indictment with causing another to travel in the interstate commerce in the commission of murder for hire. And to prove this crime, the commission, in the crime of commission for murder to hire, the government has to prove these three elements. I believe that's how the court's instruction is written. Wait a minute. It says caused to another to travel in interstate commerce in the commission of a crime. In the commission of the murder for hire. Yes, and the case law is that the travel needs to promote or facilitate the murder for hire. Why does it say that in the instructions? It doesn't say that. But that instruction was not requested by the defendant. The defendant's instruction requested that the travel be linked with the intent to murder be linked with causing the defendant to travel. I would agree that they have to exist in the timeframe during the commission of the offense, which was a scheme really to commit murder for hire. But they don't have to be specifically linked. As all were saying, they both have to occur in the commission of the crime. And the court did instruct the jury that the crime, you know, was charged between April 25th and July 25th. And that would be during the commission of that crime. That would be the time in which all these elements would have had to occur under the instructions as the court gave the jury. Of course, read as a whole. So you hang your hat on the words, in the commission of the crime. Well, yes, actually, Your Honor, to an extent we are. And the fact that the court ---- It doesn't say for the purpose of committing. No. It says in the commission. That's correct. Now, all the defendant wanted was that word with be in the second element. The defendant hasn't said that these instructions are unclear other than that the word with intent to commit murder was omitted. So we're only talking about the omission of the word with. The defendant has said that if the word and is there, it would have been appropriate. The fact that the defendant both had the intent to commit the murder and caused the defendant to travel, and the case law would, of course, say that for sufficiency of evidence, the travel has to be in conjunction with or in connection with to facilitate or promote the commission of the crime. And that is done in the commission of the crime, which the court instructed the jury was between April 25th and July 25th, that would be sufficient for the jury to find all of the elements that are required in this case. Was this harmless error if wrong? No, Your Honor. And that, of course, if the instruction was wrong or insufficient, then we believe that the error is definitely harmless because the evidence was really overwhelming. The defendant wasn't prevented from arguing that intent didn't occur at any particular time because the defendant, he couldn't argue that intent didn't occur, say, with April, but might have occurred someplace else because the defendant took the stand and said flat out, I never had the intent to murder my wife. This was all something Mr. Robinson came up with. I tried to talk him out of it. So the defense was precluded from arguing any kind of specific thing about when an incident occurred. But the government's evidence showed. Why doesn't that show that if the jury was not properly instructed, there was evidence that they could have believed that would have gone the other way, in which case it wouldn't have been harmless? Oh, no, this is just Driggers' testimony I'm talking about. Driggers is the one that said he did not intend to commit the crime. I understand. Maybe they believed him. They didn't, obviously. Well, if properly instructed, they might have believed him. I don't think so because Driggers said he never had the defense argued that there had to be a connection between the intent and the crime. Driggers simply said he never had an intent to commit the crime. If the intent is never there, Your Honor, they couldn't have convicted him if they had believed him. Well, the evidence was he came once and nothing happened. Well, actually, that's not completely true because I think the evidence when he came in April shows that he had the intent to commit murder. He might not have finalized all the details of the plan. You managed to hang a jury once. You got a mistrial. Wasn't there a? It was a mistrial, Your Honor, but that was because evidence was improperly went back into the jury room. It was something that had been redacted, but it went back to the jury room unredacted and that caused a mistrial. There was no. No, this was not a case. The jury convicted. Well, I'm not sure if the jury reached a verdict the first time, but they may have. I can't remember. I'm sorry. Okay. But if what happened in April, basically, before the meeting, Driggers got Robinson's name from an inmate at Leavenworth, he knew. Driggers didn't know Robinson. He called him up and said he had a business opportunity for him, even though he'd never met him, and he asked him to come to Idaho and said he'd pay him for his travel. As soon as they met, Driggers basically said, first he felled him out and said, Would you be willing to kill a witness? And Robinson said, Sure. And Driggers said, Well, the witness I want you to kill is my ex-wife. Now, he didn't. I think the jury could find that it was credible that Driggers had this intent prior to the travel, that he didn't just meet Robinson and say, Okay, I want to kill my ex-wife. I think based on the conversations they had and what happened at that meeting in April, the jury could easily have found that Driggers had the intent to cause, to murder his wife before he caused Robinson to travel. Driggers agreed to pay Ted and Robinson $10,000 for the murder, this very first meeting that they had. And the next day, Driggers took Robinson around and he said, This is where my ex-wife lives. It's going to be tough to kill somebody in the neighborhood where all the houses are supposed to be. It's funny he went back and forth. I mean, it took a long time for him to finally say, Yes, definitely, do it. And why couldn't the jury, the populist doctor, have found that at the time of the travel, he didn't really have a reckless intent? Well, I think that there, because I think the evidence is overwhelming, whether the travel was in April or in July. Driggers really... I mean, he said, Look, you can come. You can change your mind. Even then, you can keep the money. We've got to have this long chat before anything is done. Why can't the jury find from all that that he didn't have a, didn't have an intent at the time, a firm intent at the time he, Robinson traveled that the murder be committed? Because Driggers said he wanted to kill his ex-wife at the first meeting.  You will find that if you read their conversations in context, Driggers was concerned about... Certainly permissible reading of the record. But why couldn't the jury, the populist doctor, have found otherwise? I suppose they could have. They didn't, though I'm suggesting, not because of the instruction, but that because Driggers, when he was talking, never relinquished his intent to kill his wife. He simply was concerned about working out the details of the actual murder so that he would not get caught. Time's up. Thank you, Your Honor. The government simply asks that the conviction and sentence be affirmed. I think you have about a minute and a half left. Thank you. Very quickly, I have not argued that the instruction should be connected with when, or I'm sorry, with and. That is the problem, I argue, that they should be with. And in looking at, I guess, what the government's claiming it's hanging its hat on, the Commission for Murder for Higher Language, in the introductory part of the instruction, significantly, I mean, that's just the name of the charge. The court does not instruct the jury at any time that it must find that the travel was in the commission. That's just advising the... It's just the name of the charge, and then the court says, in order to convict him of this, you must find these elements, none of which require any nexus between the travel and the murder for higher. And so the with... You didn't object to the instruction on that basis in district court, did you? It was instruct. No, it was instruct. I mean, this commission for higher part in the introductory, this is the first time we've heard of this. What was your specific objection to the instruction? I wasn't trial counsel, but the specific objection, and it was over the two different trials, the defense specifically wanted, and he caused travel with the intent that murder be committed. So the proposed jury instruction and the arguments and the briefing and all that was that, with the intent to commit murder, had to be connected to the travel. So they never did get into what level of nexus is required, and that's what Edelman in those cases are doing. How important is the mailing? Is it in furtherance? Is it to promote? Is it essential, et cetera, et cetera? But we never get there because our jury was never even told that there needs to be the connection. And I like your analogy of the niece coming. When I got on the plane in Boise to come here, I had the intent to commit oral argument, which you might consider to be a crime. If I decide I need to go kill someone later. Why wasn't any error harmless? Because, again, the properly instructed jury could have decided that he was so incredibly wishy-washy, and back in April he just didn't know what he wanted to do. And, therefore, I would say that's a reasonable doubt. I mean, if we were ‑‑ I guess that's exactly what it is, would be definitionally reasonable doubt. So I think my time is up. Your time is up. Thank you. Okay. Just use your hands for a minute. We're going to see an argument in United States v. Hernandez. All right.
judges: Kozinski, Fletcher, Rawlinson